ATLANTIC, GULF AND PACIFIC COMPANY, Appellant, *v.* THE STATE OF NEW YORK, Respondent.

Third Department, July 6, 1922.

Canals — claim against State for cost of reconstructing wash walls on Barge canal which were originally constructed by claimant under contract — findings inconsistent as to whether wall collapsed through fault of claimant — appellant entitled to findings most favorable — judgment dismissing claim reversed and new trial granted.

On an appeal from a judgment of the Court of Claims the appellant is entitled to the benefit of the findings most favorable to itself where there is any inconsistency or contradiction therein.

In an action against the State to recover for the cost of the reconstruction of wash walls on the Barge canal in which the question at issue was whether the walls fell because of the withdrawal of water from the canal by the claimant while engaged on another contract, or whether the collapse of the walls was due to improper plans and specifications furnished by the State with reference to the character of the .soil involved, the judgment dismissing the claim should be reversed and a new trial granted, where the findings of the court are so inconsistent and contradictory as to leave the Appellate Division in doubt as to the actual cause of the collapse of the walls and where there is some evidence tending to support the claimant's contention that the collapse of the walls was due to the character of the soil at the place in question.

APPEAL by the claimant, Atlantic, Gulf and Pacific Company, from a judgment of the Court of Claims in favor of the defendant, entered in the office of the clerk of said court on the 23d day of November, 1921, dismissing its claim on the merits.

*Charles Irving Oliver* [*Russell H. Robbins* of counsel], for the appellant.

*Charles D. Newton, Attorney-General* [*Carey D. Davie* and *James Gibson, Deputies Attorney-General,* of counsel], for the respondent.

COCHRANE, P. J.:

Claimant under a contract with the State known as contract No. 25, constructed about thirteen miles of the Champlain canal in the years 1911 and 1912. Part of the construction consisted of wash walls the purpose of which was to protect the banks of the canal from the action of waves due to the passage of boats through the canal. The bottom of the walls was about nine and one-half feet above the bottom of the prism of the canal. Claimant had previously completed a contract with the State known as contract No. 15 for the construction of a lock known as lock No. 11. The two contracts related to work for the construction of different sections of the canal which sections adjoined each other. After the completion of the wash walls the contractor desired to drain that portion of the canal where the work was proceeding under contract No. 25 so that it might with greater facility and advantage conduct excavations in the prism of the canal. For that purpose the contractor on December 18, 1911, opened the valves in the sides of lock No. 11 to permit the escape of water. Prior to doing so the representatives of the State informed the contractor that the banks were " in a very heavily saturated condition " and warned him as to the danger to the wash walls in lowering the water and that it (the contractor) would have to assume all responsibility for damages which might occur. On January 23, 1912, claimant requested of the representatives of the State permission to open the gates of lock No. 11 " as the valves have not sufficient capacity to take care of all the flow of the stream." On January 30, 1912, permission was granted to open the gates on condition that the claimant execute a bond indemnifying the State against all damages which might occur in consequence thereof which bond accordingly was executed by the claimant. It was found by the court that practically all the water had been drained from the canal through the lock valves before the gates were opened so that the opening of the gates and the permission granted therefor by the State and the bond executed by the claimant to the State are not important factors in this litigation. There is testimony on the part of the claimant that its reason for desiring the opening of the gates was to take care of a possible surplus of water in the event of a freshet or unusually high water. In December, 1911, 205.96 cubic yards of wash wall collapsed and slid into the canal after the water

was withdrawn therefrom, and on April 12 and 13, 1912, 3,610.60 cubic yards slid into the canal. The claimant under orders by the State reconstructed the wash walls which had thus collapsed at an expense of $6,969.81, to recover which amount this claim is being prosecuted. It has been found by the court that the original wash walls were properly constructed in accordance with the plans and specifications furnished by the State. The water was withdrawn from the canal by the contractor for its accommodation and to facilitate and expedite the execution of its own contract after information by the State of the possible danger to the walls by reason of such action and that responsibility for damages would rest upon the contractor. If under these circumstances the walls fell because of the withdrawal of the water from the canal undoubtedly the duty of reconstruction rested upon the claimant. The claimant, however, contends that the collapse of the walls was not due to the withdrawal of the water but was due to improper plans and specifications furnished by the State having reference to the character of the soil involved. This was the issue before the Court of Claims.

The findings are confusing and unsatisfactory. It is not clear therefrom what caused the walls to fall. Numerous findings were made at the request of the claimant, some of which contradict the findings as contained in the decision. The former should receive as much consideration as the latter. In cases of contradiction or inconsistency claimant as the appellant is entitled to the benefit of the findings most favorable to itself. Important findings in the decision are as follows: " 21½. That 205.96 cubic yards of wash wall failed after the water was withdrawn from the canal prior to Jan. 1, 1912, caused by the removal of the water in front of it and 3610.60 cubic yards of wash wall slid into the canal in March and April, 1912, while the frost was going out of the ground. * * * 29. That the water could be drawn gradually during cold weather permitting the banks to freeze as it was drawn and the wash wall would stay in place after the water was drawn. But the wash wall would sluf (sic) out in the spring unless the water was let in the canal before the frost had an opportunity to go out. 30. That the ground in the vicinity of this contract was not stable enough to hold the wash wall while the frost was going in and out. The frost entered the unprotected earth slope below the wash wall. In the spring the action of the elements softened the earth slope and the pressure of the wall above caused it to give way. The heaving of the frost also tended to throw the wash wall out. 31. That when a certain amount of the material was relieved of the frost it slid into the canal on the plane which was frozen.

32. That the cause of the failure of the wash wall between Stations 361 and 700, in Champlain Canal Contract No. 25, was the withdrawal of the water by claimant exposing the banks of the canal to the action of the elements, and removing the hydrostatic pressure against the sides of the banks."

In the findings made at claimant's request it appears that 3,610.60 cubic yards of wall slid into the canal on April twelfth and April thirteenth; that on those days there was continual freezing temperature and that at that time and for about a month prior thereto the water had been continuously above the bottom of the wash walls. The theory of the State was that frost entered the bank below the wash walls when the water was removed therefrom and that when the frost went out of the banks the latter not being protected by the water pressure against its sides collapsed. The court has found that the walls slid into the canal " while the frost was going out of the ground " and has also found directly to the contrary that when the walls collapsed the temperature was actually below the freezing point. It has found that " the wash walls would sluf (sic) out in the spring unless the water was let in the canal before the frost had an opportunity to go out," and it has also found that when the walls collapsed the water was actually in the canal above the bottom of the walls. It has found " that when a certain amount of the material was relieved of the frost it slid into the canal on the plane which was frozen," and at the same time it has practically found that when the material " slid into the canal " it was not " relieved of the frost " because there was a constant freezing temperature at that time. It has found that the walls collapsed in part because of the removal of " the hydrostatic pressure against the sides of the banks," and at the same time it has found that such hydrostatic pressure actually existed at the time of and for about a month before the collapse. These findings leave us in such doubt as to the actual cause of the collapse of the walls that we are unable to say that the judgment dismissing the claim rests on a sufficiently sure foundation.

There is evidence tending to support the claimant's contention that the soil at the place in question was porous and spongy. It was so admitted by the chief witness for the State who also stated that in his opinion the character of the material " had something to do with those slides." In some instances the State changed the angle of the slope of the walls because of the unstable condition of the earth underneath so as to diminish the pressure thereon. Since the contention of the claimant finds some support in the evidence and the findings fail to show that the contention of the State is satisfactorily established a new trial becomes necessary.

We conclude, therefore, that the judgment should be reversed on the law and facts and a new trial granted, with costs to the appellant to abide the event. The court disapproves of findings contained in the decision and numbered 21½, 29, 30, 31 and 32.

All concur.

Judgment reversed on law and facts and new trial granted, with costs to the appellant to abide the event. Because of the conflict in the findings, this court disapproves of findings contained in the decision and numbered 21½, 29, 30, 31 and 32.